# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JULIANA FLORA, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO. 12-6455 |
| THE WYNDCROFT SCHOOL, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

BUCKWALTER, S.J.                                                                              February 25, 2013

Currently pending before the Court is the Partial Motion to Dismiss Pursuant to Rule 12(b)(1) of Defendant The Wyndcroft School. For the following reasons, the Motion is granted without prejudice.

## I.    FACTUAL BACKGROUND

According to the facts set forth in the Complaint, Plaintiff Juliana Flora, a Caucasian female, was hired by Defendant The Wyndcroft School ("Wyndcroft") through its head of school—Kathleen Wunner—in 2007. (Compl. ¶¶ 11–12.) Plaintiff was originally employed as a substitute teacher. (Id. ¶ 12.) From 2007 through 2009, Plaintiff served as a part-time substitute teacher and taught students in all grades from pre-kindergarten through eighth grade. (Id. ¶ 13.) In January 2010, Plaintiff was employed by Defendant as a full-time substitute teacher for fifth and sixth grade. (Id. ¶ 14.)

In or around March 2010, Plaintiff and Dr. Wunner, acting on behalf of Wyndcroft, signed a contract wherein Defendant agreed to employ Plaintiff as a full-time Pre-kindergarten

Teacher for the 2010–2011 school year at a salary of $34,000 per year plus private health insurance, life insurance, and long-term disability insurance. (Id. ¶ 16.) During the 2010-2011 school year, Plaintiff taught pre-kindergarten students, as well as one class of fifth grade social studies in the afternoon. (Id. ¶ 17.) As a result of Plaintiff's performance, Dr. Wunner, on behalf of Defendant, offered Plaintiff another contract for the 2011-2012 school year. The contract, which was signed by both Plaintiff and Defendant, agreed to employ Plaintiff as a full-time Pre-kindergarten Teacher for the 2011–2012 school year at a salary of $35,360, plus provide private health insurance, life insurance, long term disability insurance, and pension benefits. (Id. ¶ 20 & Ex. B.) At the time Plaintiff entered into this contract with the Defendant, Defendant was aware that Plaintiff was pregnant and due to deliver on or about August 31, 2011. (Id. ¶ 21.) Defendant also knew that Plaintiff would be on maternity leave during part of the fall semester of the 2011 school year. (Id.)

Around the same time that Plaintiff signed her contract with Defendant for the 2011–2012 school year, Defendant hired four other individuals with no prior service to the school as full-time teachers. (Id. ¶ 22.) One individual was hired to teach first grade, one was hired to teach fourth grade, one was hired to teach fifth grade, and the last was hired to teach drama. (Id.) Plaintiff had previously taught first, fourth, and fifth grade at Defendant's school and, prior to signing the latest contract, had expressed to Dr. Wunner her interest in teaching such grades. (Id. ¶¶ 23, 24.) Dr. Wunner, however, advised Plaintiff that the positions were not being offered to Plaintiff because of her pregnancy and pending absence during the school year. (Id. ¶ 24.)

Dr. Wunner retired in July 2011 and was replaced by Gail Wolter as Head of School. (Id. ¶ 25–26.) In August 2011, during a meeting between Plaintiff and Ms. Wolter, Plaintiff was advised that her contract would not be honored by Defendant. (Id. ¶ 27.) Ms. Wolter explained that the Defendant was only offering one pre-kindergarten class for the 2011–2012 school year and thus had to eliminate Plaintiff's full-time teaching position. (Id.) During the same meeting, Ms. Wolter advised Plaintiff that she had three options in lieu of her contract: (1) Plaintiff could take the entire 2011–2012 school year off and resume as a full-time pre-kindergarten teacher for the 2012-2013 school year; (2) Plaintiff could be a substitute teacher for the 2011–2012 school year with an enhanced pay of $20 more per day; or (3) Defendant would get a long term substitute teacher during Plaintiff's maternity leave (September, October, and November of 2011) and Plaintiff could return in December 2011 as a full-time pre-kindergarten teacher per the contract. (Id. ¶ 28.) Plaintiff elected the third option. (Id. ¶ 29.)

Following this meeting, however, Plaintiff was advised that the Defendant's Board of Directors did not approve of the option elected by Plaintiff. (Id. ¶ 30.) Plaintiff was told by Ms. Wolter and, subsequently, by letter dated August 8, 2011, that she would be granted her maternity leave up to November 27, 2011 and, as of November 28, 2011, she would be employed as a full-time preferred substitute teacher at $120 per day. (Id. ¶ 31.) Defendant also agreed to provide healthcare benefits to Plaintiff at Defendant's cost during the school year. (Id.) Finally, the letter indicated that Plaintiff would be given "preferred status" for staffing at Wyndcroft for the following year and that Plaintiff would be "first in line" for the anticipated opening for the 2012–2013 school year. (Id. ¶ 32.)

Plaintiff returned to work on November 28, 2011 from her maternity leave and was called to teach approximately six times from that date until the end of December 2011. (Id. ¶ 33.) Because of the lack of substitute teaching opportunities provided by Defendant, Plaintiff filed for unemployment compensation benefits in January 2012. (Id. ¶ 34.) Ms. Wolter attempted to persuade Plaintiff not to file for such benefits. (Id.)

On February 2, 2012, Plaintiff filed a claim of gender discrimination against the Defendant with the Equal Employment Opportunity Commission ("EEOC"). (Id. ¶ 35.) In March 2012, Defendant renewed the employment contracts for the school year 2012–2013 of several other teachers' employed by Defendant. (Id. ¶ 36.) Defendant also entered into new employment contracts for the 2012–2013 school year with individuals who had not previously been employed by Defendant. (Id.) Defendant did not contact Plaintiff to discuss a contract for the 2012–2013 school year. (Id. ¶ 37.) Plaintiff believes that Defendant currently has two pre-kindergarten classes, with two separate teachers, for the 2012–2013 school year and that these classes began in September 2012. (Id. ¶ 38–39.)

For the entire 2011–2012 school year, Plaintiff earned total wages of approximately $4,642.81 as a "preferred" substitute teacher for Defendant. (Id. ¶ 40.) Since the end of the 2011–2012 school year, Defendant has not provided any compensation or benefits to Plaintiff. (Id. ¶ 41.)

On November 15, 2012, Plaintiff initiated the current civil action against Defendant setting forth four counts for relief: (1) violation of Title VII of the Civil Rights Act based on Defendant's discrimination of Plaintiff due to her pregnancy; (2) violation of the Pennsylvania Human Relations Act ("PHRA") based on Defendant's discrimination of Plaintiff due to her

4

gender and pregnancy; (3) retaliation in violation of Title VII of the Civil Rights Act and the PHRA based on Defendant's failure to offer Plaintiff any employment opportunities for the 2012–2013 school year; and (4) breach of contract based on the 2011-2012 school year contract entered into between Plaintiff and Defendant. Defendant moved for partial dismissal on January 22, 2013 based on Plaintiff's alleged failure to exhaust administrative remedies, and Plaintiff responded on February 1, 2013. The Motion is now ripe for judicial consideration.

## II. STANDARD OF REVIEW

Under Rule 12(b)(6),[1] a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P.12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. Following these basic dictates, the Supreme Court, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), subsequently defined a two-pronged approach to a court's review of a motion to dismiss. "First, the tenet that

---

[1] Although Defendant brings the present motion under Federal Rule of Civil Procedure 12(b)(1), the Third Circuit has held that a motion challenging a failure to exhaust administrative remedies in an employment case is properly considered under Rule 12(b)(6). Anjelino v. N.Y. Times. Co., 200 F.3d 73, 87 (3d Cir. 1999). The Third Circuit reasoned that "[f]ailure to exhaust is 'in the nature of statutes of limitation' and 'do[es] not affect the District Court's subject matter jurisdiction.'" Id. at 87 (quotation omitted). Numerous decisions from within the Third Circuit have thus reviewed motions to dismiss due to failure to exhaust administrative remedies under Federal Rule of Civil Procedure 12(b)(6). See, e.g., Smith v. Donahoe, No. Civ.A.12-2639, 2013 WL 172209, at *3 (E.D. Pa. Jan. 15, 2013); Slingland v. Donahoe, No. Civ.A.11–4591, 2012 WL 4473231, at *2 (E.D. Pa. Sept. 27, 2012); Deserne v. Madlyn & Leonard Abramson Ctr. for Jewish Life, Inc., No. Civ.A.10–3694, 2010 WL 4665915, at *1 n.1 (E.D. Pa. Nov. 17, 2010).

a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Thus, although "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678–79. Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679. "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232–34 (3d Cir. 2008) (holding that: (1) factual allegations of complaint must provide notice to defendant; (2) complaint must allege facts suggestive of the proscribed conduct; and (3) the complaint's "'factual allegations must be enough to raise a right to relief above the speculative level.'" (quoting Twombly, 550 U.S. at 555)).

## III.   DISCUSSION

Defendant's Partial Motion to Dismiss alleges that Plaintiff has failed to exhaust her administrative remedies with respect to her retaliation claim. It is well-established that a Title VII plaintiff is required to exhaust all administrative remedies before bringing a claim for judicial relief. 42 U.S.C. § 2000e-5(e); Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996); DeLa Cruz v. Piccari Press, 521 F. Supp. 2d 424, 431 (E.D. Pa. 2007). To do so, the plaintiff must "fil[e] a timely discrimination charge with the EEOC." DeLa Cruz, 521 F. Supp. 2d at 431 (citing

Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984)). The purpose of this requirement is "(1) to ensure 'that an employer is made aware of the complaint lodged against him and is given the opportunity to take remedial action,' and (2) to give 'the EEOC the opportunity to fulfill its statutory duties of eliminating unlawful practices through the administrative process.'" O'Donnell v. Michael's Family Rest., Inc., No. Civ.A.07-5386, 2008 WL 2655565, at *2 (E.D. Pa. July 1, 2008) (quoting Jackson v. J. Legis Crozer Library, No. Civ.A.07-481, 2007 WL 2407102, at *5 (E.D. Pa. Aug. 22, 2007)).[2] In Title VII actions, failure to exhaust administrative remedies is an affirmative defense on which the defendant bears the burden of proof. Williams v. Runyon, 130 F.3d 568, 573 (3d Cir. 1997).

The administrative exhaustion requirement "is tempered by a fairly liberal construction given to EEOC charges." Schouten v. CSX Transp., Inc., 58 F. Supp. 2d 614, 616 (E.D. Pa. 1999). Generally, a Title VII plaintiff cannot bring claims in a civil lawsuit that were not first included in an EEOC charge and exhausted at the administrative level. Burgh v. Borough Counsel of Montrose, 251 F.3d 465, 469–70 (3d Cir. 2000). It is well-established that merely checking off the box on the Charge form is insufficient to exhaust it as a claim. McCutchen v. Sunoco, Inc., No. Civ.A.01-2788, 2002 WL 1896586, at *3 (E.D. Pa. Aug. 16, 2002). Rather, a plaintiff that checks off a box for a particular type of discrimination on a Charge form, but then

---

[2] "Although the PHRA does not contain an analogous [exhaustion of administrative remedies] requirement, courts have held that the PHRA should be interpreted consistently with Title VII." McLaughlin v. Rose Tree Media Sch. Dist., 52 F. Supp. 2d 484, 491-92 (E.D. Pa. 1999) (citations omitted). "To bring suit under the PHRA, a plaintiff must first have filed an administrative complaint with the PHRC within 180 days of the alleged act of discrimination." Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1997) (citing 43 Pa. Cons. Stat. §§ 959(a), 962).

leaves the form bereft of any allusion to allegations of such discrimination cannot be deemed to have exhausted that claim. Id.

On the other hand, the mere failure to check a specific box on the EEOC charge form is not a fatal error. Doe v. Kohn Nast & Graf, P.C., 866 F. Supp. 190, 196 & n.2 (E.D. Pa. 1994). Rather, "[t]he most important consideration in determining whether the plaintiff's judicial complaint is reasonably related to his EEOC charge is the factual statement." Id. at 197. Thus, "if the allegations made in the complaint filed in this Court could be 'reasonably expected to grow out of' those contained . . . in the EEOC charge, the pleading of the plaintiff will withstand a motion to dismiss, as the administrative remedies available to plaintiff will have been exhausted." Schouten, 58 F. Supp. 2d at 616 (quoting Page v. ECC Mgmt. Servs., No. Civ.A.97-2654, 1997 WL 762789, at *3 (E.D. Pa. Dec. 8, 1997)) (further quotations omitted). Stated differently, where a plaintiff attempts to assert a claim at the district court level which was not raised in the administrative charge, the claim is considered exhausted if it is "fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." Antol, 82 F.3d at 1295 (quoting Waiters, 729 F.2d at 237). A reasonable EEOC investigation should include claims not specifically mentioned in the EEOC charge "where there was a close nexus between the facts supporting the claims raised in the charge and those in the complaint." Pourkay v. City of Philadelphia, No. Civ.A.06-5539, 2009 WL 1795814, at *5 (E.D. Pa. June 23, 2009) (citing Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208, 1212 (3d Cir. 1984)). "In such a case, the Court may reasonably expect an awareness on the part of the defendant that such allegations are likely." Schouten, 58 F. Supp. 2d at 616–17.

Because the United States Court of Appeals for the Third Circuit has declined to adopt a per se rule that all claims of retaliation are ancillary to the filing of a discrimination-based EEOC Charge, a reviewing court must closely scrutinize the record to determine whether retaliation falls within the scope of the actual EEOC investigation. Pourkay, 2009 WL 1795814, at *6 (citing Robinson v. Dalton, 107 F.3d 1018, 1024 (3d Cir. 1996)). The elements of a discriminatory retaliation claim include: (1) conduct protected by Title VII taken by the plaintiff; (2) adverse employment action against the plaintiff by the employer; and (3) a causal link between the protected conduct and the employer's adverse action. Charlton v. Paramus Bd. of Educ., 25 F.3d 194, 201 (3d Cir. 1994). The Third Circuit has identified two situations where such a retaliation claim will be within the scope of Charge even where not specifically alleged: (1) where it falls within the scope of the prior EEOC complaint or (2) where it falls within the scope of the EEOC investigation that arose out of it. Robinson, 107 F.3d at 1025. Where the facts underlying the properly alleged discrimination claims are closely connected to the facts underlying the retaliation claims, courts have deemed the retaliation claims fairly within the scope of an EEOC investigation, notwithstanding the failure to clearly enumerate the basis for such a claim. See, e.g., Lin v. Rohm & Haas, 865 F. Supp. 2d 649, 662–63 (E.D. Pa. 2012) (holding that where an EEOC complaint alleges retaliation and additional acts of retaliation occur while the EEOC investigation is pending, the plaintiff need not file a new complaint if the additional acts are fairly within the scope of the complaint or the investigation arising out of that complaint); Jackson v. J. Lewis Crozer Library, No. Civ.A.07-481, 2007 WL 2407102, at *4 (E.D. Pa. Aug. 22, 2007) (holding that while the complaint does not use the word "retaliation," the actions alleged by plaintiff were within the scope of a claim for retaliation and would have been within

9

the scope of any investigation conducted by the PHRC as a result of the PHRC complaint); Demshick v. Del. Valley Convalescent Homes, Inc., No. Civ.A.05-2251, 2007 WL 1244440, at *12 (E.D. Pa. Apr. 26, 2007) (allowing a retaliation claim to withstand summary judgment despite the plaintiff having checked only "disability" and not "retaliation" as the cause for discrimination on her EEOC charge form, because "a plain reading" of the plaintiff's narrative revealed a claim for retaliation as well); Hartwell v. Lifetime Doors, Inc., No. Civ.A.05-2115, 2006 WL 381685, at *18 (E.D. Pa. Feb. 16, 2006) (noting that although plaintiff could have been more "artful" in the presentation of his retaliation claim, although plaintiff emphasized race and disability discrimination, and although the EEOC conducted no investigation with respect to any claim of retaliation, the description of his race and disability discrimination claim indicating that he was fired a single day after filing a discrimination charge should have been sufficient to alert the EEOC to a potential retaliation claim); Carter v. Potter, No. Civ.A.02-7326, 2004 WL 2958428, at *6 (E.D. Pa. Dec. 21, 2004) (holding that an EEOC complaint that alleged race, disability, and age discrimination reasonably encompassed retaliation claim where the facts of the retaliation were virtually identical to the facts underlying the discrimination claims).

Courts, however, have been less willing to find that a retaliation claim falls within the scope of an EEOC complaint or EEOC investigation where the events giving rise to the retaliation claim did not arise until after the completion of the EEOC investigation. See, e.g., Pourkay, 2009 WL 1795814, at *7 ("[T]he acts of discrimination alleged to have occurred *after* the closure of Plaintiff's EEOC investigation are not properly exhausted."); Wagner v. Crawford Cent. Sch. Dist., No. Civ.A.04-264, 2008 WL 901957 at *2 (E.D. Pa. Mar. 31, 2008) (finding retaliation claim outside scope of administrative complaint and investigation of discrimination

10

because "[t]he retaliatory conduct alleged by plaintiff occurred after the PHRC completed its investigation" and thus "does not fall within the scope of the investigation"); Moss v. Potter, No. Civ.A.06-1498, 2007 WL 1521210, at *4 (W.D. Pa. May 24, 2007) (holding that because the retaliatory actions about which plaintiff complained did not arise until after the EEOC had completed its investigation of the discrimination charges, those retaliation claims did not fall fairly within the scope of the original administrative charges), aff'd, __ F. App'x __ , 2007 WL 2900551 (3d Cir. 2007); Allen v. Nat'l R.R. Passenger Corp., No. Civ.A.03-347, 2005 WL 2179009, at *10–11 (E.D. Pa. Sept. 6, 2005) ("[C]laims involving instances of discrimination that arise after the completion of an EEOC investigation do not fall within the scope of the agency's investigation."); Crumpton v. Potter, 305 F. Supp. 2d 465, 475–76 (E.D. Pa. 2004) (declining to address merits of incident that formed basis of retaliation claim because incident occurred after completion of EEOC investigation).

In the present case, the events giving rise to Plaintiff's retaliation charge did not occur until after the EEOC completed its investigation on her exhausted Charge of Discrimination. Plaintiff filed her initial Charge of Discrimination with the EEOC on February 2, 2012. That document set forth her allegations as follows:

> I. I was hired by [Defendant] on or about September 1, 2010, as a Pre-Kindergarten Teacher. In or about March 2011, I told Dr. Kate Wunner, at the time Head of School, that I was pregnant and I would be due August 31, 2011. Dr. Wunner knew I was interested in working with 1st and 4th graders but she told me she could not offer me those positions because I would be gone. However, I renewed my pre-Kindergarten teaching contract from September 2011 to September 2012. On or about August 1, 2011, I received a call from the new Head of School, Gail Wolter, and she asked me to come in to brainstorm new ideas. When I met up with Ms. Wolter she told me I had three employment options with [Defendant]. In all three options I would receive three months of maternity leave. The first option, I could come back to work on November 2011, continue teaching pre-kindergarten, and

11

Respondent would get a long-term substitute while I was gone. The second option, I could be a first-call substitute, be compensated more than regular substitute but less than full-time teachers, and I could keep my benefits. The third option, after my maternity leave was exhausted I could come back at the end of the year. In addition, Ms. Wolter informed me that if there was an open position that I would be the first considered.

II. On or about August 5, 2011, I told Ms. Wolter that I would take the first option. Ms. Wolter then informed me that she would have to consult with the Board of Trustees. After Ms. Wolter consulted with the board of Trustees she informed me I had to take the second option. Ms. Wolter said she would send out a letter stating that this was my decision and she would send it out to teachers and parents. Ms. Wolter also questioned me if my family relied on my income. I am aware that since March 2011, there have been four teachers hired.

III. I believe I have been discriminated against because of my pregnancy, in violation of Title VII of the Civil Rights Act of 1984, as amended, in that Respondent broke my contract and forced me to substitute part-time.

(Def.'s Mot. Summ. J., Ex. C.) The only box checked on the Charge of Discrimination was for "sex" discrimination. The EEOC sent to Wyndcroft its Notice of Charge of Discrimination on March 28, 2012. (Def.'s Mot. Summ. J., Ex. D.) On August 30, 2012, however, the EEOC Federal Investigator issued a letter to Plaintiff advising of her recommendation that the Charge of Discrimination be dismissed. (Def.'s Mot. Summ. J., Ex. E.) Thereafter, on September 4, 2012, the EEOC mailed to Plaintiff a Notice of Right to Sue Letter. (Def.'s Mot. Summ. J., Ex. F.)

Plaintiff, through counsel, filed a second Charge of Discrimination with the EEOC, on October 16, 2012, and requested that it be dual-filed with the PHRC. (Def.'s Mot. Summ. J., Ex. G.) This new Charge reiterated the initial allegations and set forth the following new allegations:

14. [Plaintiff] was advised by Ms. Wolter, and subsequently confirmed by letter dated August 8, 2011 from Ms. Wolter, that [Plaintiff] would be granted her maternity leave up to November 27, 2011 and as of November

28, 2011 would be employed as a full-time preferred substitute teacher at $120 per day for each day that [Plaintiff] was called to teach.

15. The letter from [Defendant] dated August 8, 2011, advised [Plaintiff] that she would be given "preferred status for staffing the following year" and that she would be "first in line to fill" the anticipated opening for the 2012-2013 school year.

16. [Plaintiff] did return to work on November 28, 2011 from her maternity leave as a substitute teacher for [Defendant] and continued to work as such for the remainder of the 2011-2012 school year.

17. On or about February 2, 2012, while still employed as a substitute teacher by [Defendant], [Plaintiff] filed a claim of gender discrimination against [Defendant] with the EEOC. It is believed that [Defendant] was notified of the charge on or about February 8, 2012.

18. On September 4, 2012, the EEOC issued a Dismissal and Notice of Rights Letter to [Plaintiff] with respect to the claim of discrimination she filed with the EEOC on February 2, 2012.

19. In the meantime, it is believed, and therefore averred, that as of September 2012, [Defendant] is providing two pre-kindergarten classes for the 2012-2013 school year.

20. It is believed, and therefore averred, that two separate teachers employed by [Defendant] are teaching the two pre-kindergarten classes which began in September 2012.

21. Despite [Defendant's] assurances that [Plaintiff] would be given "preferred status for staffing" and would be "first in line" for the anticipated opening for 2012-2013, [Plaintiff] was never contacted by [Defendant] about the second pre-kindergarten teaching position for the 2012-2013 school year.

22. [Plaintiff] has not been employed by [Defendant] in any capacity for the 2012-2013 school year.

> 23. [Plaintiff] further avers that [Defendant's failure to employ [her] as a full-time pre-kindergarten teacher for the 2012-2013 school year is in retaliation for [Plaintiff's filing of a charge of discrimination with the EEOC in February, 2012 and constitutes further discrimination against [Plaintiff] because of her gender and pregnancy.
>
> 24. [Plaintiff] avers that [Defendant's] failure to employ [her] in any capacity for the 2012-2013 school year is in retaliation for [Plaintiff's filing of a charge of discrimination with the EEOC in February, 2012 and constitutes further discrimination against [Plaintiff] because of her gender and pregnancy.

(Def.'s Mot. Summ. J., Ex. G.) Plaintiff filed her federal Complaint on November 15, 2012. At that time, the EEOC had not yet accepted the second Charge of Discrimination and had not served Wyndcroft with a copy. Further, the EEOC has not yet issued a Right to Sue Notice permitting Plaintiff to proceed on the issues raised in that second Charge.

Given such facts, the Court cannot find that Plaintiff's retaliation claim has been exhausted. At the most basic level, Plaintiff's original Charge of Discrimination to the EEOC did not check off the box for retaliation. Moreover, although her statement of the basis for the Charge noted that Defendant promised her the opportunity to be first in line for the 2012–2013 school year should a pre-kindergarten teaching opportunity open up, nothing in the alleged facts foretold that such an opportunity was not going to be offered. Further, the EEOC's investigation ran from approximately March 2012 through August 30, 2012, prior to the start of the 2012–2013 school year. Thus, the events giving rise to the alleged retaliation claim—the failure to hire Plaintiff as a teacher in one of its two pre-kindergarten classrooms for the 2012–2013 school year—did not occur before the close of that investigation. Finally, no evidence suggests that the EEOC was aware of or made any investigation into any potential retaliation in the form of

14

Plaintiff not being hired for the 2012–2013 school year as a result of her filing of her original Charge of Discrimination.[3] Accordingly, the Court must find that Plaintiff has failed to exhaust her administrative remedies with respect to her retaliation claim.

IV. **CONCLUSION**

As Plaintiff's retaliation claim was not fairly within the scope of the February 2012 EEOC charge or ensuing investigation, this claim is not properly before the Court. In turn, Defendant's Partial Motion to Dismiss must be granted. Nonetheless, the Court notes that Plaintiff appears to have filed a timely second Charge of Discrimination with the EEOC in October 2012, which raises a retaliation claim. If and when the EEOC issues a Right-to-Sue

---

[3] The cases cited by Plaintiff in opposition to Defendant's Motion are distinguishable as they involved retaliation claims that, while not specifically mentioned in the original administrative charge, occurred prior to or during the administrative agency's investigation and, thus, could be said to be fairly within the scope of that investigation. See Waiters v. Parson, 729 F.2d 233, 237–38 (3d Cir. 1984) (declining to find suit barred for failure to exhaust administration remedies because although the specific retaliation claim was not raised in the formal EEOC complaint, the EEOC district director concluded that a pattern of events that occurred after the plaintiff's filing of an informal complaint a year earlier demonstrated retaliation); Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208, 1212 (3d Cir. 1984) (finding new retaliation claim could fairly be considered an explanation of the original failure to promote charge where the events occurred prior to conclusion of EEOC investigation and the defendant did not argue that the retaliation charge was beyond the scope of the original discrimination claim or that a reasonable investigation by the EEOC would not have encompassed that retaliation charge); Smith v. Donahue, No. Civ.A.12-2639, 2013 U.S. Dist. LEXIS 6609, at *15 (E.D. Pa. Jan. 15, 2013) (noting that EEOC complaint and ensuing investigation for disability discrimination and retaliation based on the plaintiff's suspension encompassed federal disability discrimination and retaliation claim based on change of job duties where addendum to EEOC complaint and EEOC investigation summary evidenced the fact that the agency was aware of the plaintiff's altered job duties); see also Robinson v. Dalton, 107 F.3d 1018, 1022 (3d Cir. 1997) (declining to determine whether retaliatory discharge claim was exhausted in light of the undeveloped factual record).

15

letter on that Charge, Plaintiff shall not be barred from seeking leave to amend her Complaint in this Court to re-insert this cause of action.